SAVOY, Judge.
The specifications of error presented by the defendant insurer in this dog bite case on appeal are that the trial court erred in: (1) holding that Harlan Shane Savoie (Shane) was bitten by the dog “Sarge”; (2) holding that “Sarge” had exhibited vicious propensities as to place his owner on notice; and (3) awarding judgment against the defendant and casting it for costs. Plaintiff answered the appeal praying for an increase in the award.
Plaintiff, Guidry Savoie, filed suit individually and on behalf of his six-year-old son, Harlan Shane Savoie, to recover damages for injuries received by Shane when he was attacked by a German Shepherd watchdog named “Sarge” owned by Mrs. Arnita Barrentine who resided with Bernard D. Nunez, Shane’s grandfather whom he was visiting at the time of the alleged attack, in Cameron Parish, on May 19, 1967. Named as defendant in the suit is Mr. Nunez’s liability homeowner insurer.
The trial judge summarized the events leading to the accident and the “alleged” vicious showing of “Sarge” in his written reasons for judgment as follows:
“The evidence shows that the boy, Harlan Shane Savoie, had been visiting his grandfather, Mr. Bernard Nunez, and that Harlan Shane had been playing with a little dog in the yard. He was sitting down on the ground while playing with it when the big dog, Sarge, bit Shane about the face and ear. The only other witness to the accident was Harlan Shane’s nine-year-old sister who actually did not see the dog bite Harlan Shane, but she verified the fact that there were only two dogs, Sarge the big dog and the little dog that Harlan Shane was playing with. Sarge is a German Police dog and is a dog about two feet in height and weighs about sixty pounds.
“Mr. Bernard Nunez testified that he did not think the dog was vicious, but that it would bark at strangers. In his testimony he testified that he knows the dog is a bad dog, but in his statement given to the adjuster on October 3, 1967, he stated that the dog never bit anyone before, and that he was a good dog. Mr. Nunez further testified at the trial that he did see the dog kill two chickens before he bit Harlan Shane. Allie Storm, another witness, testified that she lived about four miles from Mrs. Barrentine’s home, that she knew Sarge, and that some time before the biting of Harlan Shane, when she was going to Mrs. Barrentine’s house, the dog came at her snarling, and that she mentioned it to Mrs. Barrentine. Two weeks later she further testified that she went to her sister’s house and saw Sarge, and that she was *434 afraid, and she took a crescent wrench for her protection as Sarge growled at her. She further testified that the dog chased cars, including her car, hut that she never heard him hark. On the occasion when the dog growled at her, he came about six feet of her; she never heard of the dog biting anyone before nor did the dog snap or bite at her. Loreen Blanchard, who lived about two or three hundred yards from Arnita Barrentine, owned a little dog named Nickie. She testified that Sarge got a hold of Nickie and took off running with him, and that Sarge put a couple of holes in his back. Mrs. Barrentine was present at this incident. Mrs. Blanchard further testified that Sarge got Nickie again at her house, and that at this occasion he bit Nickie real deep.
“The next witness to testify was Don Billiot who said that he knew Sarge, and that Sarge had bit him on the arm when he picked up Mr. Barrentine’s baby. He further testified that Sarge turned him loose when he put the baby down. He also added that he had never noticed the dog to act mean or vicious to him except on this incident. Davey Griffith testified that he had a Beagle dog, and that he took him in the Barrentine’s yard, and Sarge crippled his dog for a week, and that Mrs. Barrentine was there. Mrs. Barrentine testified that Mrs. Storm told her that Sarge had growled at her, and that she admitted that she saw Sarge get in a fight with Mrs. Blanchard’s dog. She further admitted that when the dog growled it might be a warning.”
Although nobody actually saw “Sarge” bite Shane, we feel the circumstances in the case lead but to the inevitable as the trial judge properly held. The injuries received by Shane were very severe; the lacerations on his face and ear requiring 62 sutures, and the cartilage behind Shane’s ear was ragged and torn.
Both parties apparently agree as to the law governing this case, citing Kling v. U. S. Fire Insurance Company, 146 So.2d 635, 1 A.L.R.3d 1011 (La.App. 1 Cir.1962). In the Kling case, supra, the court stated what constitutes notice to an owner of the vicious propensities of a dog as follows:
“* * * The general rule on this point is set forth in American Jurisprudence, Volume 2, verbo Animals, Section 49, pages 731-732 as follows:
“ ‘However the modern and more reasonable doctrine is that he need not have had actual notice thereof to make him chargeable; notice that the disposition of the animal was such that it would be likely to commit an injury similar tO' the one complained of is sufficient. The owner is liable if he knew or should have known its dangerous propensities or that it was a probable source of harm. But a cross and savage disposition on the part of a dog is not necessary in order to impose liability on its owner for its assault; he is equally responsible where it appears that the dog had a propensity to bite only in play, if he knew of such mischievous habit, and injury results.’”
Applying the applicable law to this case, we cannot say that the trial judge committed manifest error in holding that the owner had knowledge of prior incidents indicating that “Sarge” had vicious and dangerous propensities, and she was put on notice that Sarge could or would injure someone.
The last question presented for our determination in view of our findings above relates to the quantum awarded to plaintiff as compensation.
The record reveals the severe lacerations suffered by Shane, the two' days spent in the hospital; and lastly, the remarkable recovery shown by Shane after the unforgettable incident. For his pain and suffering the trial judge awarded the sum of $2,500.00, and an additional $312.05 for past medical expenses subject to a credit of $250.00 previously paid. With this award we are in accord.
However, plaintiff, on appeal, strenuously contends that future medical expenses for plastic surgery should be *435 awarded to him contrary to the holding of the trial judge. With this contention we are also in accord.
The deposition of Dr. Edmund Nagem was to the effect that he could not tell whether or not the scars would lighten in the future, and he could not be sure that keyloid formations would not also result. Dr. George Dix classified the scars as moderate; and although as a general practitioner he would not give his recommendation either way as to the need for plastic surgery, he did state that it would be quite some time before the scars disappeared if ever, saying that Shane truly had some deep lacerations. Dr. Cecil Clark testified he treated Shane and removed the sutures from his wounds in several trips on different days. He said that although Shane had made an excellent recovery there was still some residual scarring, and that plastic surgery could eliminate the more pronounced zig zag form of scarring. He testified further that the surgery fee would run approximately $1,000.00, and the hospital charges would be an additional $1,000.00.
It is true that the minor made a fine recovery from the severe bites inflicted on him by the dog. However, an examination of the photos in evidence reveals some prominent scars on the right cheek of the youth. The uncontradicted testimony is that it will require $2,000.00 for remedial surgery and hospitalization for the youth. We feel that an award of $2,000.00 is justified for this item of damages.
For the reasons assigned the judgment of the district court is amended by increasing the award for general damages from $2,500.00 to the sum of $4,500.00, or a total award of $4,812.05, subject to a credit of $250.00 already paid. As amended the judgment of the district court is affirmed at defendant’s costs.
Amended and affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.