PRICE, Judge.
George K. Beach brought this action under the provisions of Article 2321 of the Louisiana Civil Code, seeking to recover damages for personal injuries caused by the bite of a dog belonging to Robert Good-acre, Allstate Insurance Company’s assured. From an adverse judgment awarding plaintiff the sum of $2,500.00 for personal injuries and $622.10 for medical expenses, Allstate has suspensively appealed.
We find the material facts of the case are not seriously disputed and are as follows :
Beach was a breeder and trainer of dogs, in addition to his usual occupation as a laboratory technician. On January 31, . 1967, he visited the premises of the G & C Honda, 925 Westgate Drive in Bossier City, to discuss the future delivery of a Doberman Pinscher puppy to Robert Goodacre, a co-owner of this firm. When he arrived, Goodacre asked him to look at a dog which he had just purchased. They walked to the rear yard of the business where a large German Shepherd dog was lying near the rear fence. The dog was chained to a post situated near the fence. Goodacre walked out to the dog and Beach followed some five or six feet to his rear. The dog stood on his feet when Goodacre reached him and as Beach was circling to the left of Good-acre to obtain a better view of the dog, it suddenly lunged toward Beach. The dog bit Beach on the left thigh, inflicting a deep laceration approximately four inches in length. This wound was described by the treating physician as gapping and macerated. There were two additional puncture wounds just below this laceration. As a result of these injuries plaintiff was bedridden at home for two weeks after receiving emergency treatment. The wound re-opened during the month of February, 1967, and further treatment was rendered for this condition. A skin graft was performed in May of 1967 to reduce the scar effect of the wound. Plaintiff was hospitalized eight days during this procedure.
The only permanent damage resulting to plaintiff from the injury was a T-shaped scar of approximately four inches in length.
Appellant does not complain of the amount awarded to plaintiff for these injuries, nor has plaintiff answered the appeal asking for an increase in the award. Appellant asks that we review the following findings of the trial judge which it contends were erroneous:
(1). That Robert Goodacre was guilty of any negligence causing plaintiff’s injury.
*217 (2). In refusing to apply either the assumption of the risk or contributory negligence doctrine, as plead alternatively by appellant in the event the ' court found Goodacre guilty of negligence.
(3). In finding that plaintiff had every reason to believe Goodacre had a grip -on the dog’s collar or chain and and would control the dog.
Article 2321 of the Louisiana Civil Code provides that the owner of an animal is answerable for the damage he has caused. The jurisprudence of this state has consistently applied the provisions of Article 2316 in conjunction with those of Article 2321 in determining the responsibility of an owner of an animal causing damage to another person.
In the case of Talley v. Travelers Insurance Co., (Ct. of App., 1st Cir., 1967), 197 So.2d 92, the general rule is stated as follows :
“The law with respect to personal injuries caused by domestic animals is well settled. For one to recover for such injuries, they must satisfy the burden of proving (1) the existence of dangerous propensity of the animal inflicting the damage, and (2) knowledge of such propensity on the part of the owner of the animal. These dual requirements for liability have been uniformly adopted by our courts.” (P. 95).
We think it is clear from the evidence in this case that these two requirements necessary to establish negligence on the part of the owner have been met by plaintiff. The evidence amply sustained the trial judge’s finding that the dog was vicious under certain circumstances, all within the knowledge of Goodacre.
This dog was purchased by Goodacre for a watchdog to patrol the premises of G & C Honda at night to prevent pilfering. Good-acre admitted in his testimony that he purposely encouraged the dog to become a one-man dog so that he would become a better watchdog. All employees of the G & C Honda testified that the dog was hostile to anyone other than Goodacre when he was within the fenced rear area of the G & C Honda premises. Several of the employees testified they were afraid of the dog and would not approach him when he was in this area. Defendant even admits in its answer that the dog was hostile when serving as a watchdog on the premises of G & C Honda.
The vicious tendencies of the dog under circumstances that existed at the time of the attack on plaintiff, and the awareness of these tendencies, are pointed out by the following testimony of Goodacre under cross-examination:
“Q. Well, when you first acquired it, did it bark and growl at people?
“A. No it didn’t.
“Q. Did you become concerned over this?
“A. To some extent, yes.
“Q. Were you concerned that it wasn’t going to be a watchdog? Right?
“A. Yes, sir.
“Q. But after two or three days the dog adapted itself to you, did it not?
“A. Yes, sir, he sure did. Within about two days. This explains I think, to some extent, his change in attitude. I tried to let no one else feed him or water him or play with him but me.
“Q. Did it have hostile tendencies toward anyone else?
“A. No, sir, not exactly hostile. It did to some extent. It wasn’t friendly to anyone else.
“Q. Did it bark at them?
“A. On occasion, yes sir it would.
“Q. Did it lunge at them?
*218 “A. On a couple of occasions it did lunge at different parties.
“Q. At who?
“A. I don’t recall.
“Q. But you do recall the dog lunging at them?
“A. Yes, sir. One of the boys from Barksdale from the Canine Corps came out to look at the dog one time and went back where I had him chained and he walked up to the dog and drew his hand back like he was going to hit him and the dog did lunge at him. He said he did that deliberate to provoke the dog.
“Q. Did you warn Mr. Beach that this dog might lunge at him?
“A. No, sir, I didn’t.
“Q. Did you warn Mr. Beach that you intended to have a hostile dog?
“A. No, sir.”
It is thus clear that Goodacre knew that under the conditions existing at this time the dog might be vicious toward another person and failed to warn plaintiff, whom he had asked to look at the dog. Under these circumstances the negligence of Goodacre has been sufficiently established.
Appellant cites a number of cases holding that a person may legally maintain a hostile dog on his premises for use as a watchdog. However, these cases concern actions brought by trespassers, or intruders, with no lawful business on the premises involved and have no applicability to this case.
The principal complaint of appellant is the refusal of the trial court to apply either the doctrine of assumption of the risk by plaintiff, or that of contributory negligence on his part. Appellant asserts that plaintiff is an expert in the field of dog training and that it is a known fact by dog trainers, familiar with the German Shepherd breed, that they are hostile and vicious when chained.
Appellant argues that plaintiff, possessed with this knowledge, was either negligent or assumed the risk of injury by walking within the orbit of the chain by which the dog was tied.
The trial judge found that plaintiff could reasonably believe that the owner had control of the dog either by the collar or chain and would restrain the- dog should he become hostile. In addition, the court pointed out that at the time plaintiff and Goodacre approached the dog, there was no way to determine the length of the chain as it was in a coiled position.
Plaintiff’s testimony describing the incident was not refuted by Goodacre and was thus accepted by the trial judge as being correct. Plaintiff testifies he kept several feet behind Goodacre as they walked into the rear yard where the dog was chained. He further stated that Goodacre walked up to the dog and that the dog assumed the standing position. It appeared to plaintiff that Goodacre took hold of the dog’s collar as he had bent over the dog and had both hands on the animal. Plaintiff testified that at this time he was some twelve yards from the dog. The dog did not exhibit any hostility by growling or barking. Plaintiff testified that he then moved in to a closer distance in a circular fashion to the left of Goodacre to obtain a better view. He still believed that Good-acre had control of the dog. Without any warning the dog suddenly lunged and inflicted the serious laceration to plaintiff’s thigh.
On the basis of these facts, we are in accord with the opinion of the trial judge that plaintiff was neither guilty of any contributory negligence nor had he assumed the risk of injury by his actions in approaching the dog.
From our appreciation of the evidence, plaintiff was approaching this animal with the degree of care reasonably to be expected of a person with his knowledge and training. He was requested to go look at *219 the dog in the company of its master. He took no action which would have agitated the animal. He held back behind the master of the dog and only moved in closer proximity when he believed the owner had the animal in restraint by holding the collar. Even at this time the evidence shows he was a number of feet away from the animal and no hostility had been exhibited by the animal.
Counsel for appellant has cited several cases from this state and other states that have considered the defense of contributory negligence or assumption of the risk involving injury by an animal to a person learned in the behavior of the particular breed of animal involved. None of the cited cases are apposite to this situation as the injured plaintiff in each case was held to have known of the potential danger and failed to use reasonable care in preventing injury to himself.
We find, as did the trial judge, that plaintiff, Beach, acted as a reasonable and prudent person under the circumstances and was not guilty of any negligence contributing to his injury, nor did he assume the risk of injury by his actions in this case.
For the foregoing reasons the judgment appealed from is affirmed at appellant’s cost.