284 So.2d 370 (1973)
Golden D. COX, Jr., Individually and as Administrator of the Estate of his minor daughter, Charlotte Ann Cox, Plaintiff-Appellant,
v.
RELIANCE INSURANCE COMPANY and John H. McCurdy, Defendants-Appellees.
No. 12152.
Court of Appeal of Louisiana, Second Circuit.
October 10, 1973.
Harry S. Stephens, Shreveport, for plaintiff-appellant.
Watson, Murchison, Crews & Arthur by William P. Crews, Jr., Brittain & Williams by Jack O. Brittain, Natchitoches, for defendants-appellees John H. McCurdy and Reliance Ins. Co.
Before AYRES, PRICE and HALL, JJ.
HALL, Judge.
Plaintiff, Golden D. Cox, Jr., instituted this suit individually and as administrator of the estate of his minor daughter, Charlotte Ann Cox, against John H. McCurdy, and McCurdy's liability insurer, Reliance Insurance Company, for injuries sustained by plaintiff's daughter as a result of an incident in which a dog named Towzer owned by McCurdy allegedly bit the child on the face causing serious multiple lacerations. The defendants filed a third party petition against Cox alleging his negligence and seeking recovery against him for any sum for which defendants were held liable. The district court ruled in favor of the defendants holding that the dog did bite the child, but plaintiff failed to prove the dog was vicious, and it was unnecessary to determine whether the defendant had any knowledge of dangerous propensities or viciousness on the part of the dog. We affirm this judgment.
Plaintiff-appellant argues that under the literal provisions of LSA-C.C. Art. 2321[1] and the interpretation given to that *371 Article in Delisle v. Bourriague, 105 La. 77, 29 So. 731 (1901), the slightest fault on the part of the owner of an animal is sufficient to establish liability and the owner bears the burden of proof of exculpating himself from liability. Appellant urges that we reconsider the rules clearly enunciated by this court in Rolen v. Maryland Casualty Company, 240 So.2d 42 (La.App. 2d Cir. 1970) writs refused 256 La. 1149, 241 So.2d 252 (1970)[2], where we held that in order to recover for injuries caused by a domesticated animal, the plaintiff has the burden of proving:
(1) The existence of a dangerous propensity of the animal inflicting the damage, and
(2) Knowledge of such propensity on the part of the owner of the animal.
All of the arguments advanced by appellant based on the codal articles, jurisprudence and policy considerations were fully considered and discussed in the Rolen opinion. We adhere to our ruling in Rolen and apply it to this case.
On the afternoon of March 26, 1971, plaintiff's daughters, Mary Jean Cox, almost seven years old, and Charlotte Ann Cox, five years old, were playing "ladies" in their yard. Mr. Cox was sitting on the patio porch repairing his cigarette lighter and Mrs. Cox was inside the house preparing supper. Both Mr. and Mrs. Cox noticed two dogs owned by John McCurdy come on their premises. About five minutes after the Coxes had seen the dogs enter the premises, Mr. Cox heard Mary Jean scream, "The dog has got Charlotte!". He ran to see what happened and found Charlotte Ann bleeding from wounds on her face. Charlotte Ann was taken to the hospital where her wounds required extensive stitching. She later had to undergo plastic surgery.
Mary Jean testified she put a blanket on Towzer's back and attempted to ride him. Towzer had not growled at Mary Jean when she put the blanket on him. Mary Jean tried to get the blanket off of Towzer but was unable to do so and then told Charlotte Ann to get the blanket off the dog. Towzer was walking away while Charlotte Ann was trying to pull the blanket off his back. Both Mary Jean and Charlotte Ann stated that Towzer bit Charlotte Ann while she was trying to remove the blanket from his back. We agree with the trial court's finding that Towzer did, in fact, bite Charlotte Ann.
The next factual issue for determination is whether Towzer had dangerous propensities prior to the incident in question. Towzer was a hound or cur dog weighing approximately 65 pounds when he was full-grown. Mr. Dixon, Mrs. McCurdy's father, gave Towzer to Bessie Cox Crow when Towzer was six weeks old.
Appellant contends Towzer's alleged viciousness is supported by evidence that Mrs. Crow had to chain the dog on many occasions, that Towzer bit another child on a previous occasion, that he killed armadillos and coons, and that McCurdy often kept the dog caged in a fortress-like pen.
Mrs. Crow testified she chained Towzer during hunting season at the request of some local hunters because he would interfere with nearby deer hunts by barking and turning the deer. She further testified Towzer killed many armadillos and a coon *372 that came around her house. A veterinarian testified the fact that a dog will attack small wild animals does not indicate a dangerous propensity toward humans.
Appellant attempted to prove Towzer bit another child more than three years prior to the incident giving rise to this suit. In November, 1967, Martha Lee Sullivan, Shirley Pickett and another lady, and Mrs. Sullivan's two children, visited Bessie Cox Crow. The ladies were in the house having coffee and the children were outside eating cookies. The ladies heard Chance Sullivan cry out and Mrs. Sullivan ran outside to see about her child. When Mrs. Sullivan came back into the house she said that the old dog had bit her baby. Mrs. Sullivan had not seen the incident. Mrs. Sullivan took her child to Dr. L'Herisson and he bandaged the child's ear.
Dewey Crow, who was raking leaves in the yard at the time of the incident, testified he heard the Sullivan child crying and looked back and saw the child on the ground. Towzer was eating a cookie and was standing about three feet from the Sullivan child. The dog was not growling or acting like he was doing anything toward the child.
Mrs. Crow was helping her husband rake leaves when Mrs. Sullivan and the others arrived. Mrs. Crow propped her rake next to the doorsteps of the house and went inside the house with her guests. She testified when she got outside after the Sullivan child cried out, the rake was laying on the ground near Towzer with the teeth of the rake pointed upward. Mrs. Crow thought the Sullivan child was injured by the rake rather than by the dog.
Mrs. Sullivan did not testify at the trial since her exact whereabouts were unknown. The district court noted that although Mrs. Sullivan took her child to Dr. L'Herisson for treatment, the doctor was not questioned at the trial about treatment of the Sullivan child for a dog bite. The district court was convinced that Towzer did not attack nor bite the Sullivan child. The conclusions of the trial court with respect to factual findings are entitled to great weight. After carefully reviewing the evidence relating to the Sullivan child incident, we find no error in the district court's finding that Chance Sullivan was not bitten by Towzer.
Approximately eight months after the Sullivan child incident Mrs. Crow decided to give the dog back to Mr. Dixon. Mrs. McCurdy picked up the dog and took it to Mr. Dixon. Mrs. Crow testified she told Mrs. McCurdy there was a rumor started by Martha Lee Sullivan that Towzer had bitten Mrs. Sullivan's child. However, Mrs. Crow told Mrs. McCurdy she did not believe Towzer bit Chance Sullivan. Mr. Dixon kept Towzer for a short period of time and later gave him to the McCurdys.
The testimony of those who knew Towzer reveals that Towzer was loving, gentle, and easy to handle. The McCurdys stated that the dog was not penned except during the squirrel season. He was penned during squirrel season in order to keep him from running away or keep someone from picking him up.
We agree with the district court's finding that Towzer demonstrated no dangerous propensities prior to biting Charlotte Ann Cox. Plaintiff has not sustained his burden of proof.
For the reasons assigned, the judgment of the district court is affirmed at appellant's cost.
Affirmed.
NOTES
[1] "Art. 2321. The owner of an animal is answerable for the damage he has caused; but if the animal had been lost, or had strayed more than a day, he may discharge himself from this responsibility, by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment."
[2] Concurring in the denial of writs, Justice Tate noted that Art. 2321, according to its original intent, provided strict liability for keepers of animals which injure humans, but recent jurisprudence has varied the application of the article. He further noted that until the Supreme Court re-examines the question, there is no error of law in the Rolen decision under the facts found.