305 So.2d 113 (1974)
Jerome C. HOLLAND, Plaintiff-Appellant-Relator,
v.
Charles E. BUCKLEY, Jr., et al., Defendants-Appellees-Respondents.
No. 54317.
Supreme Court of Louisiana.
October 28, 1974.
Rehearing Denied November 27, 1974.
*114 Kenneth Rigby, Love, Rigby, Dehan & Love, Shreveport, for plaintiff-applicant.
Steven H. Beadles, Cook, Clark, Egan, Yancey & King, Shreveport, for defendants-respondents.
TATE, Justice.
The issue before us is: When an innocent bystander is bitten by a dog, who shall bear the damages so caused? The bystander passing on the street, who did not provoke the attack? Or the owner of the dog, who created the risk by letting the dog go loose?
For reasons to be elaborated, we here determine that, in accordance with the intent of our Louisiana Civil Code, the owner of an animal is ordinarily responsible for the harm it does, although certain limited defenses are available to absolve him of the presumption of fault created by the animal's injuring another. We here overrule as erroneous certain decisions which have crept in, based upon the common law of England, that an owner of a domestic animal is not liable for injuries caused by the animal unless the victim proves that the owner knew or should have known of the animal's harm-causing characteristic and nevertheless negligently let it do harm.
*115 Facts
The plaintiff Holland sues to recover for personal injuries suffered as a result of a dog-bite. Made defendants are the dog's owner (Buckley) and his liability insurer. The court of appeal affirmed the dismissal of the plaintiff's suit. 287 So.2d 599 (La. App. 2d Cir. 1974), certiorari granted 288 So.2d 639 (La.1974).
The plaintiff Holland was walking his nine-pound toy poodle on the sidewalk across the street from the defendant Buckley's residence. Buckley's 60-pound German shepherd Candy, about eighteen months old, was running loose on his lawn, in the presence of the defendant's father.
Without warning, Candy ran across the street and grabbed Holland's poodle by the neck and shoulders and threw her over onto her back. Holland stepped in and warded off Candy with his foot while picking up the poodle. Candy then jumped up, apparently still trying to get to the poodle, and bit Holland deeply on the inside of his elbow.
In dismissing the suit, the previous courts held that the injured victim had the burden of proving that the owner of the animal was negligent and that this negligence caused the injury. Our trial brother held: "This dog has been shown not to be vicious, and not to the knowledge of the defendant owner, certainly . . . The dog gets the first bite free, under the domestic animals' rule of this [Second] circuit."
Louisiana Jurisprudence Interpreting Civil Code Article 2321
We now find to be incorrect the judicial interpretations, upon which the previous courts herein relied, of Civil Code Article 2321. As will be shown, the judicial interpretations of this article, which provides for liability of the owner or keeper of animals for damage caused by them, has been subject to judicial interpretations inconsistent with one another, as well as with what we find to be the legislative intent of such article.
Article 2321 of the Civil Code of 1870 provides: "The owner of an animal is answerable for the damage he has caused * * *."[1] "This provision was essentially enacted by the codification of 1808 (Book III, title 4, art. 20, par. 7) and re-enacted in its present text as article 2301 of the Civil Code of 1825. The wording of the 1808 enactment is identical to that proposed for the equivalent provision by the Project of the Year VIII (1800) for the French Civil Code (Book III, Title III, Art. 19, par. 6), which was adopted almost verbatim as Article 1385 of the Code Napoleon (1804). See Art. 2321, La.C.C. Comp.Ed., in 17 West's LSA-C.C. p. 19 (1972).
The first three decisions to discuss the basis of an owner's liability for the harm done by his animal, all happened to concern damage done by a dog known to be vicious: Delisle v. Bourriague, 105 La. 77, 29 So. 731 (1901); McGuire v. Ringrose, 41 La. Ann. 1029, 6 So. 895 (1895); and Montgomery v. Koester, 35 La.Ann. 1091 (1883). All of course, held the dog's owner liable for the injuries caused by his animal.
Montgomery recognized that Article 1385 of the Code Napoleon corresponded to our own Article 2321 and that the French interpretations held the owner to strict liability for harm caused by the animal, except *116 only in the cases of vis major (act of God) or of contributory fault of the person injuredand regardless of whether the animal was vicious, or the owner knew of its character. The opinion also noted the English rule which based the master's liability on negligence: the owner of an animal was responsible for harm caused by it only if the animal was known by him to be dangerous and he nevertheless let it escape to do harm. However, since liability was clear under both the English and French authorities, the court did not find it to be necessary to determine whether Louisiana should follow the French holdings that the owner's scienter is immaterial, rather than the English rule.
McGuire simply followed Montgomery. although quoting only Montgomery's summary of the common law rule.
In holding the owner liable, Delisle discussed the present issue in these terms, 105 La. 84-85, 29 So. 734: "Article 2321 of the [Louisiana] Revised Civil Code (article 1385, Code Napoleon) is founded upon the presumption that the fault is chargeable to the owner of the animal that caused the damage, or to the person in whose use or under whose care it was at the time of the accident; and that presumption can be made to give way only in the presence of proof either of an unforeseen event or by the imprudence of the one injured.. . . The French commentators have approvingly referred to this view. From 20 Laurent, p. 675, we quote: `That is to say, that there is no responsibility when there is no fault; the one to whom the damage is imputable should be permitted to prove that he was not at all at fault. But it is only needful to prove the slightest fault (culpa levis) to hold the owner responsible.'" Since there was obviously some fault, the court affirmed the recovery against the owner for the victim's death without further discussion.
The confusion in the jurisprudence developed following the decision later that year in Martinez v. Bernhard, 106 La. 368, 30 So. 901 (1901). Under very hard facts,[2] the court held, again quoting Laurent, that no fault was shown. The syllabus of the court announced the principle as follows: "The owner of a gentle animal, which has always been of a kind temper, and has never attempted to bite anyone, and has never given occasion to suspect that he would bite, is not liable in damages by the mere fact that the animal has never bitten someone. Unless there be some fault, light as it may be, liability does not arise. * * *" 106 La. 368, 30 So. 901. This was the first case that indicated that, contrary to the French interpretations, an owner of an animal which caused harm could exculpate himself from the presumption of fault simply by proving the previously gentle nature of the creature.
The syllabus in this case, and dicta in Tripani v. Meraux, 184 La. 66, 165 So. 453 (1936) (syllabus 3),[3] are responsible for later expressions that the basis of an owner's liability for harm done by his animal is guilt of some fault or negligence in the ownership or possession of the animal.
The subsequent decisions fall into three main categories:[4]
(1) Those which allowed the victim to recover from the animal owner upon proof of the dangerous propensities of the animal and the owner's presumed knowledge thereof: Tamburello v. Jaeger, 249 La. 25, 184 So.2d 544 (1966); Serio v. American *117 Brewing Co., 141 La. 290, 74 So. 998 (1917); Beach v. Allstate Insurance Co., 234 So.2d 215 (La.App. 2d Cir. 1970); Savoie v. Travelers Indemnity Co., 223 So.2d 432 (La.App. 3d Cir. 1969); Kling v. U. S. Fire Insurance Co., 146 So.2d 635, 1 A.L. R.3d 1011 (La.App. 1st Cir. 1962). These opinions usually proceeded on the assumption that such proof is necessary for recovery, without discussion of the civil-law basis for liability under Article 2321.
(2) Those which held that the harm caused by the animal created a presumption of fault on the part of its owner, which placed a burden upon the owner to show that he was free to even the slightest fault: Bentz v. Page, 115 La. 560, 39 So. 599 (1905) (new owner did not know of vicious nature of dog, but nevertheless at fault for not knowing); Granger v. United States Fidelity & Guaranty Co., 266 So.2d 526 (La.App. 3d Cir. 1972). In these cases, the owner was held liable as failing to exculpate himself of the slightest fault. This principle was also applied in holding liable the owners of horses left unattended in a city area for damages caused when such horses ran away and collided with someone, regardless of whether the horse had ever so misbehaved before: Trenchard v. New Orleans Ry. Co., 123 La. 36, 348 So. 575 (1909); Damonte v. Patton, 118 La. 530, 43 So. 153 (1907).
(3) Those which held that, in order to recover damages caused him by the accident, the victim has the burden of proving both the existence of a dangerous propensity of the animal inflicting the injury and also knowledge of such propensity on the part of the owner: Cox v. Reliance Insurance Co., 284 So.2d 370 (La.App. 2d Cir. 1973); Losch v. Travelers Insurance Co., 264 So.2d 240 (La.App. 4th Cir. 1972), certiorari denied, 262 La. 1176, 266 So.2d 450 (1972); Rolen v. Maryland Casualty Co., 240 So.2d 42 (La.App. 2d Cir. 1970), certiorari denied, 256 La. 1149, 241 So.2d 252 (1970); Braswell v. Central Mutual Insurance Co., 223 So.2d 204 (La.App. 2d Cir. 1969); Bailey v. Travelers Insurance Co., 210 So.2d 93 (La.App. 1st Cir. 1968), certiorari denied, 252 La. 832, 214 So.2d 160 (1968); Hicks v. Barrow, 208 So.2d 417 (La.App. 4th Cir. 1968), certiorari denied, 252 La. 168, 210 So.2d 53 (1968); Talley v. Travelers Insurance Co., 197 So.2d 92 (La.App. 1st Cir. 1967), certiorari denied, 250 La. 913, 199 So.2d 920 (1967).
Liability under Article 2321; Legislative Intent
The reasoning in the third line of cases, placing a heavy burden of proof upon the victim to recover for injuries caused him by the animal, finds no support in the text or in the legislative or jurisprudential history of the Article 2321.
The text unequivocally proves: "The owner of an animal is answerable for the damage he has caused * * *." As noted, the 1808 text is verbatim of that of an equivalent provision of the Project of the Year VIII (1808) for the French Civil Code, adopted with slight change as Article 1385 of the Code Napoleon (French Civil Code). The legislative expose des motifs and reports of the owner's liability for damages caused by his things or animals show the reason to be because the damage is imputed to his lack of care and because, moreover, nothing that belongs to one person should be able to harm another without making reparation for it. 13 Locre, La Legislation Civile, Commerciale et Criminelle de la France 43 (1827); 13 Fenet, Travaux Preparatories du Code Civil 476-77 (1836).
Planiol summarizes the uniform French judicial interpretations as being to the following effect: "The fault committed by the proprietor or the detainer of the animal has no need to be proved; it is presumed by the law, which declares him legally responsible for the damage. But this presumption admits proof to the contrary. The person responsible for the damage avoids liability by proving that the accident was due to a fault of the victim, or to a *118 fortuitous event." Planiol, Civil Law Treatise, Volume 2, Part 1, No. 920 (p. 517) (LSLI translation, 1959). See 2 Mazeaud, Traite The orique et Pratique de la Responsabilite Civile Delectuelle et Contractuelle, Sections 1071-1137, especially 1073, 1127, 1133 (1973).
In applying Article 1385, the French courts have not permitted the owner of the animal to exonerate himself merely by showing a lack of knowledge of the vicious propensity of the animal. To the contrary, they have required the defendant to prove the fault of the victim or rigorously to prove a cause not imputable to the owner of the animal. Planiol, cited above, No. 920. Mazeaud summarizes the three defenses which (only) can exculpate an owner of liability as a fortuitous event, the deed of a third person, or the fault of the victim. Mazeaud, cited above, Section 1133. Planiol specifically notes that Code Napoleon Article 1385 was intended to apply to dogs, as well as to other domesticated animals. Planiol, cited above, No. 921.
Toullier, an early and an authoritative commentator on the French Civil Code, noted that Article 1385 was intended to hold the master of an animal liable to one injured by it, unless such harm was a fortuitous event or the victim was at fault. 11 Toullier, Droit Civile Franchise, Section 297 (5th ed., 1839). Interestingly enough, Toullier noted that the "noxal surrender" of the Roman law, by which the owner was entitled in some instances to abandon the animal for the damage to the injured person instead of paying it, had never been commonly adopted in France; accordingly, the French Article 1385 does not permit the master this option of abandoning the animal, instead it expressly holds him liable for the damages caused by his animals because the master should have kept them from doing harm. Section 298.[5]
A provision of Article 2321 (quoted in full in Footnote 1 above and not at issue here) permits the noxal surrender to a person injured by it of a domestic animal which had strayed for more than one day. As noted, this did not come from the French law. It was not contained in the original 1808 enactment, but it was added by the 1825 code. The concept of noxal surrender, permitting the owner without fault at his option either to make reparation or to surrender a domestic beast which caused harm, was included in the Spanish law formerly applicable in the territory. See Partida Seventh, Title XV, Law 22, Las Siete Partidas (Moreau Lislet and Carleton translation, 1820). Such addition did not change the origin nor the intended application of the initially enacted provision of Article 2321, which provides that an owner is answerable for the damage caused by his article.
The defendant skillfully argues that the source of Article 2321 is not in the French sources but is instead in Domat[6] and in Las Sieta Partidas[7]. This argument is based upon the notes found in the Digest of the Civil Laws, Territory of Orleans (1808), de la Vergne volume (Claitor's edition, 1971). While we are not persuaded that the texts relied upon do permit (contrary to the French rule) an owner to escape liability for harm caused by his dog by proving himself to have been without negligence, we do not find it necessary to decide the issue on this basis.
There is genuine scholarly dispute as to whether the notes in unknown hand, placed therein at an unknown time, actually reflect the sources used by Moreau Lislet in *119 the preparation of the 1808 Code. See, e. g., Sweeney, Pascal, and Batiza, Louisiana Civil Code of 1808, 46 Tul.L.Rev. 584-627 (1972). In the particular instance here argued, the alleged sources cited[8] bear little resemblance in text and substance to the Louisiana code article adopted, being only generally related in subject matter. In actual fact, the 1808 article is a verbatim enactment of the equivalent article of the Projet of the year VIII (1800) for the French Civil Code.[9] We are unable to attach any relevance to the notes found in the de la Vergne volume, insofar as their interpretation of this article of the Louisiana code as to the issue before us.
We thus find persuasive the plaintiff's argument that we should afford Article 2321 the interpretation accorded it by the French authorities, since it was drawn from French sources and since such interpretation is more in accord with its legislative intent than that accorded it by many of the more recent Louisiana decisions.

Summary
We hold, therefore, that the correct interpretation of Civil Code Article 2321 is as follows: When a domesticated animal harms another, the master of the animal is presumed to be at fault. The fault so provided is in the nature of strict[10] liability, as an exception to or in addition to any ground of recovery on the basis of negligence, Article 2316. The owner may exculpate himself from such presumed fault only by showing that the harm was caused by the fault of the victim, by the fault of a third person for whom he is not responsible, or by a fortuitous event.
The chief difference between this view and that of the second line of cases cited above is that, therein, the owner was permitted to exculpate himself of fault by showing that he himself did not contribute to the accident by some lack of care on his part. Under our present holding, the owner can exculpate himself from the fault of having his animal hurt someone only by proving that the harm resulted from some independent cause not imputable to the defendant.
The underlying reason for the owner's liability is that, as between him who created the risk of harm and the innocent victim thereby injured, the risk-creator should bear the loss. He maintains the animal for his own use or pleasure.
Article 2321 places the master of the animal under a legal obligation to keep his animal under such guard that it does no damage to others. A fault in this obligation to control the animal and guard others from harm by it entitles the victim to recover damages thereby sustained.
We establish this interpretation in accordance with the intent of the legislation. We do so in order to reconcile with such intent the inconsistent and conflicting lines of judicial interpretations of this article, as well as to overrule decisions, mostly of the intermediate courts, plainly contrary to it.
In a jurisdiction such as Louisiana which applies civilian theories of legal *120 method, prior judicial decisions do not represent law: They are merely judicial interpretations. They should therefore be overruled when not in accord with what is now determined to be the legislative intent. Morrow, Louisiana Blueprint: Civilian Codification and Legal Method for State and Nation, 17 Tul.L.Rev. 351 (Part 1), 537 (Part 2), 545-46 (1943); Daggett, Dainow, Hebert & McMahon, A Brief for the Civil Law of Louisiana, 12 Tul.L.Rev. 12, 20-24 (1937). As we stated in Miami Corporation v. State, 186 La. 784, 173 So. 315, 320 (1936): "In Louisiana, this court has never hesitated to overrule a line of decisions . . . when greater harm would result from perpetuating the error rather than from correcting it."
We thus return to the essential civilian concept of the code article thus interpreted. We do not do so out of blind adherence to past doctrine, however, but rather from the view that the ancient intention best serves modern needs. In the crowded society of today, the burden of harms caused by an animal should be borne by his master who keeps him for his own pleasure or use rather than by an innocent victim injured by the animal.
As Mr. Justice Barham stated in his article, Liability Without Fault, 17 La.Bar Journal 271, 278 (1970): "* * * the best method for applying the law in regard to the responsibility of one for the fault of others is to stay within our Code, to apply and interpret it in the light of its civilian history but not necessarily in the light of current law in other civilian jurisdictions. We will better serve the ends of justice and maintain the Louisiana civilian concept in the field of tort liability if we adhere to the codal articles with historic reference but, when necessary, consider our interpretation in view of business, commerce, family, body politic, et cetera, as they exist today within our state boundaries and with the other states of this Union."
"In this regard, it may be pertinent to note that twenty-seven of our sister American jurisdictions have enacted statutes similar in provision to the intent of our Civil Code Article 2321, statutes which impose strict liability upon the owner of dogs which injure innocent third persons. Donaldson, Liability Arising from Owning or Harboring Animals, 36 Insurance Counsel Journal 268, 277-78 (1969); cf. Annotation, Injury by DogDefenses to Action, 66 A.L.R.2d 916, 942 (Section 6, "Statutory liability") (1959).
For the reasons assigned, we hold the plaintiff entitled to recover damages caused him by the defendant's dog, since they did not rebut the presumption of fault created by the injury thereby received.

Quantum
The lower courts did not reach the question of the quantum of the damages to which the plaintiff is entitled, since they dismissed his suit. While this court has full appellate jurisdiction of this case, we usually do not fix quantum when neither the trial nor the intermediate court has passed upon this question. Day v. Campbell-Grosjean Roofing and Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1972), and the cases cited therein.

Decree
Accordingly, for the reasons assigned, the judgment of the previous courts dismissing the plaintiff's suit is reversed, and this case is remanded to the court of appeal for further proceedings consistent with the views expressed herein. The defendants are to pay all costs of these proceedings.
Reversed and remanded.
SANDERS, C. J., and SUMMERS, J., dissent with written reasons.
MARCUS, J., dissents.
*121 SANDERS, Chief Justice (dissenting).
Although this case deals with a dog-bite, the basic holding imposing strict liability on the owner under Article 2321 of the Louisiana Civil Code applies to all damage caused by domestic animals. The holding is not confined to bites, nor is it confined to dogs. Thus, the owner is made strictly liable for damage caused, in any manner, by dogs, cattle, horses, goats, sheep, hogs, cats, geese, and chickens. I cite only two examples:
A homeowner's cat scratches a neighbor's child. The homeowner is strictly liable for the damages.
A dog runs across the highway causing an automobile driver to swerve, lose control of his car, and run off the highway. The dog owner is strictly liable for the damages.
These examples indicate that the extension of liability in the present case defies measurement.
I disagree with the holding, adhering to the long line of jurisprudence requiring proof of fault for recovery. Tripani v. Meraux, 184 La. 66, 165 So. 453 (1936); Cox v. Reliance Insurance Co., 284 So.2d 370 (La.App.2d Cir. 1973); Losch v. Travelers Insurance Co., 264 So.2d 240 (La.App.4th Cir. 1972), certiorari denied, 262 La. 1176, 266 So.2d 450 (1972); Rolen v. Maryland Casualty Co., 240 So.2d 42 (La.App.2d Cir. 1970), certiorari denied, 256 La. 1149, 241 So.2d 252 (1970); Braswell v. Central Mutual Insurance Co., 223 So.2d 204 (La.App.2d Cir. 1969); Bailey v. Travelers Insurance Co., 210 So.2d 93 (La.App.1st Cir. 1968), certiorari denied, 252 La. 832, 214 So.2d 160 (1968); Hicks v. Barrow, 208 So.2d 417 (La.App.4th Cir. 1968), certiorari denied, 252 La. 168, 210 So.2d 53 (1968); Talley v. Travelers Insurance Co., 197 So.2d 92 (La.App.1st Cir. 1967), certiorari denied, 250 La. 913, 199 So.2d 920 (1967).
In Tripani v. Meraux, supra, this Court through Chief Justice O'Neil stated:
"Although article 2321 of the Civil Code declares, unqualifiedly, that the owner of an animal is answerable for the damage he has done, the interpretation which has been put upon this article, consistently, by this court, is that the owner of an animal is liable for damages done by the animal only in cases where the owner was guilty of some fault or negligence in his ownership or possession of the animal. That is because article 2321 is merely an amplification of article 2315, which declares that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it; the controlling word in this article being the word `fault.' Accordingly, in Shawhan v. Clarke, 24 La.Ann. 390, it was held that the owner of a horse was not liable for damages done by the horse, where the owner was not guilty of any fault or negligence in the ownership or management of the horse; and, in Martinez v. Bernhard, 106 La. 368, 30 So. 901, 55 L.R.A. 671, 87 Am. St.Rep. 306, it was held that the owner of a dog was not liable for injuries inflicted by the dog's biting another person, where there was no fault or negligence on the part of the owner of the dog. On the other hand, it is well settled that one who owns a vicious dog, knowing the animal to be dangerous, keeps the dog at the owner's peril. . ."
In my opinion, if a drastic extension of liability is to be made, it should be made by the Legislature in connection with the revision of the Louisiana Civil Code now being prepared by the Louisiana State Law Institute.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
By this decision, overruling the long line of cases referred to in the dissent of the Chief Justice, and in the opinion itself, this majority again demonstrates its persistent *122 disregard for the legal soundness or wisdom of almost every aspect of this Court's jurisprudence prior to their ascendancy to this bench. It is a bold and vain venture which discards the learning and wisdom of generations of Louisiana's great jurists and lawyers.
An undertaking of this nature requires careful scrutiny, for this and like decisions bear implications of the gravest import. The decision portends that the methodology adopted here will in time be applied to other articles of the code, changing their meaning and disrupting settled principles.
Despite the many decisions to the contrary, by its conclusion that "In the crowded society of today, the burden of harm caused by an animal should be borne by his master . . . .", the majority makes a determination more properly within the province of the legislature. There are no facts in this record upon which to base such'a finding and conclusion. When the Court embarks upon a law-making function of such significance it intrudes into the legislative field. This is the political arena where courts should not tread.
I dissent for the reasons assigned by the Chief Justice and for the many reasons assigned in all the cases heretofore decided by the courts of this State on the subject beginning in 1883 with Montgomery v. Koester, 35 La.Ann. 1091. Louisiana jurisprudence, until now, reflects a deliberate and consistent pattern in formulating a rule of law based upon a reasonable interpretation of the Code. A development in the best Louisiana civilian tradition in harmony with the philosophy of our laws has been the result. Thereby the concept has been preserved that no liability exists without fault unless the legislature has clearly ordained liability without fault in particular circumstances. E. g. La.Civil Code art. 667, 2315. The rule has provoked no clamor for change in the legislature, and, in my opinion, none is indicated.
If we are to adhere blindly to the utterances of French commentators, whose number and writings are many and varied, our law requires that we should be bound by Laurent's sound and sensible analysis in the matter. He said, "there is no responsibility when there is no fault; the one to whom the damage is imputable should be permitted to prove that he was not at all at fault." 20 Laurent, p. 675. Long ago this Court adopted this interpretation in Delisle v. Bourriague, 105 La. 77, 29 So. 731 (1901) where it was said, "In all the cases in our jurisprudence to which we have been referred there was some fault for which the owner was responsible."
I would approve the result reached by the Court of Appeal.
NOTES
[1] The full text of the article is: "The owner of an animal is answerable for the damage he has caused; but if the animal has been lost, or had strayed more than a day, he may discharge himself from this responsibility, by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment." (Italics ours.)

The non-italicized portion of the article embraces the doctrine of "noxal surrender", see text below at Footnote 5, 305 So.2d 118, and was added by the 1825 revision of the 1808 code. The parties concede that this portion of the article is inapplicable to the facts of this case.
[2] The light bite-scratches of a gentle rabbit hound developed into death-causing bloodpoisoning due to the application by the victime's daughter of a superstitious remedy, the hair of the dog, to the wound.
[3] The issue in the case was the proper venue for a suit arising out of a dog-bite.
[4] The decisions cited refer to liability for damages caused by domesticated animals. Owners or keepers of wild beasts are absolutely liable under Article 2321 for all damages caused by them, whether or not the owner was at fault in permitting their escape. Briley v. Mitchell, 238 La. 551, 115 So.2d 851 (1959); Vredenburg v. Behan, 33 La.Ann. 627 (1881).
[5] These sections are translated by the late scholar Benjamin W. Miller, and published at 21 La.Bar Journal 151, 152-53 (1973), as part of a continuing translation of Toullier, Title IV of obligations, commenced at 16 La.Bar Journal 149 (1968).
[6] See Domat, The Civil Law in Its Natural Order (1694-96) (Strahan translation, 1850), Part I. Book II. Title VIII. Section ii. pp. 607-611.
[7] See Partidas VII, Title XV, Laws 22, 23, and 24, Las Sieta Partidas (Scott Translation, 1931).
[8] See Footnotes 5 and 7 above, relating to animals. The only other "source" reference to the article is to Partidas VII, Title 13, Law IV, which concerns: "In What Way a Master Is Responsible for Robbery Committed by His Slaves, and Other Men Who Live With Him". This provision only generally relates to the liability provided by the first, second, third, and fourth paragraphs of the Louisiana article, which provide respectively for the liability of parents for their children's acts, of masters for their servant's, and of teachers for their student's.
[9] See the Dainow compilation at Article 2321, La.C.C.Comp.Ed., in 17 West's LSA-C.C., p. 19 (1972). See also Batiza, The Louisiana Civil Code of 1808: Its Actual Sources and Present Relevance, 46 Tul.L.Rev. 4, 103 (1971).
[10] I. e., not absolute liability, as in the case of wild animals. See Briley v. Mitchell, 238 La. 551, 115 So.2d 851 (1959).