313 So.2d 328 (1975)
Thomas R. ADKINS, Individually, et al.
v.
FIREMAN'S FUND INSURANCE CO. et al.
No. 9813.
Court of Appeal of Louisiana, First Circuit.
May 19, 1975.
*329 Wallace A. Hunter and Calvin E. Hardin, Jr., Baton Rouge, for appellants.
Frank M. Coates, Jr., Baton Rouge, for defendants-appellees-appellants.
Boris F. Navratil, Baton Rouge, for Greater B. R. State Fair and Trade Show, Inc., and Fireman's Fund Ins. Co.
A. Howell Andrews, Baton Rouge, for defendant in reconvention Thomas Adkins, appellee-appellant.
Before LOTTINGER, COVINGTON and BAILES, JJ.
LOTTINGER, Judge.
Plaintiff, Thomas R. Adkins, individually and as the administrator of the estate of his minor son, Sean Adkins, instituted this suit for damages sustained when Sean was bitten by a dog at the Greater Baton Rouge State Fair on November 4, 1972. Defendants are Mrs. Elizabeth Smith, owner of the dog; her liability insurer, Cumis Insurance Society, Inc; Greater *330 Baton Rouge State Fair and Trade Show, Inc. hereafter referred to as the Fair; and its liability insurer, Fireman's Fund Insurance Company. Defendants filed reconventional demands against plaintiff, alternatively alleging contributory negligence on the part of plaintiff's wife and asking for contribution. The Lower Court dismissed plaintiff's suit against all defendants and further dismissed the reconventional demands. From this judgment plaintiff and plaintiffs in reconvention appealed. This court affirmed the judgment of the Lower Court in 296 So.2d 379 and rehearing was denied. Plaintiff applied to the Supreme Court for Certiorari or writ of review to the Court of Appeal. The Supreme Court granted the writ, vacated the judgment of the Court of Appeal, and remanded the case to the Court of Appeal for its review in light of the Supreme Court decision in Holland v. Buckley, 305 So.2d 113, decided October 28, 1974.
We now quote a summary of the facts from the original opinion of this court, 296 So.2d 379, 380:
"No serious issues of fact are involved in this appeal. The incident took place at the Greater Baton Rouge State Fair where the fair's annual dog show was being held immediately in front of the agricultural tent. Mrs. Smith, one of the defendants, attended the dog show with her daughter, Jan Smith, and they brought with them to the show four dogs including a five and a half year old Weimaraner named John, two small poodles and a silky terrier. John was tied with a short leash to a post at the entrance to the tent next to the aisle for entrance and exit. The other three dogs were located just across the aisle from John. With the stage thus set, Mrs. Adkins entered the tent with her four children, all of whom had just exited from the petting zoo located on the opposite side of the agricultural tent from the dog show. One of the four children, Sean Adkins, who was nearly, three years old at the time, stopped to pet the two poodles. As Sean was doing this, the Weimaraner barked, and the child, with his attention then directed toward the Weimaraner, walked toward the dog with his arms outstretched. When Sean was about an arm's length away, the dog bit him quite severely around the left eye, causing the damages here sued upon."
We also quote a portion from the oral reasons for judgment of the Trial Judge:
"I don't think Mrs. Smith or Jan was guilty of any negligence because they didn't know that this dog had any dangerous propensities and from the facts that I have heard, I don't believe John had any dangerous propensities. I don't think Mrs. Adkins was guilty of negligence either. That same four year old of mine, Mrs. Adkins, if I was walking down that same path would have been very curious like three and four year old boys are and he would have wanted to be into everything and I think if you over protect a boy you probably ultimately may have more problems than if you let him sort of vent his curiosity a bit. You were with him a normal distance from him. Your other children were right there by you. You were guilty of no negligence at all. I don't think Mrs. Smith was either, and I don't think the Fair was. I think these aisles were wide enough, ten feet wide, the dog was on a close leash with a choke collar on it; and the testimony from all concerned indicates that he was on a very close leash. The boy, out of an abundance of friendliness towards the animal heard John bark and went over to him and unfortunately he was bitten."
We now quote a paragraph from the recent Supreme Court case of Holland v. Buckley, 305 So.2d 113, 119, which summarizes the holding of that case:
"We hold, therefore, that the correct interpretation of Civil Code Article 2321 is as follows: When a domesticated animal *331 harms another, the master of the animal is presumed to be at fault. The fault so provided is in the nature of strict liability, as an exception to or in addition to any ground of recovery on the basis of negligence, Article 2316. The owner may exculpate himself from such presumed fault only by showing that the harm was caused by the fault of the victim, by the fault of a third person for whom he is not responsible, or by a fortuitous event."
Defendants, Mrs. Elizabeth M. Smith and her insurer, Cumis Insurance Society, Inc. maintain that they are not legally responsible for the consequences which resulted to Sean Adkins under the holding of the Holland case, first because fault of Mr. and Mrs. Adkins exculpates these defendants from liability, and secondly, because fault of the Fair exculpates these defendants from liability.
These defendants maintain that the word fault as used by the Supreme Court in the Holland case has a much broader meaning than negligence. With regard to the fault of Mr. and Mrs. Adkins, defendants are of the opinion that by virtue of C.C. Art. 2318 parents have an absolute obligation to "garde" their children. The word "garde" is the French word for safekeeping, care, protection, custody, charge, watch, heed, and attention. According to the evidence adduced at the trial of this matter, Mrs. Adkins was within three or four steps of Sean when he was bitten by the dog. It appears that even if she had him by the hand the same thing could have happened. Therefore, even if we give the word fault a very broad meaning, we still do not feel that Mr. or Mrs. Adkins were at fault in what occurred here.
Mrs. Smith and her insurer maintain that the Fair was at fault and this fault exculpates these defendants from liability. Again defendants maintain that a very broad definition of fault should be adopted. While it is true that the rules for the dog show were very loose and there was apparently no control to keep a vicious dog from being entered in the dog competition, we see no way that even if very strict rules had been adopted by the Fair that the dog in question would have been excluded from the show. Although he is a big dog, he appears to have been gentle and well trained. These defendants would furthermore carry the question of the fault of the Fair one more step by a reading of the Holland decision and Civil Code Article 2317 together. This article provides in part:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act . . of the things which we have in our custody."
Defendant then cites Bonvillain v. Realty Operators, 26 So.2d 25 (La.App.1st Cir. 1946) which says:
"We construe the Article [2317] to mean by things in one's custody, such things over which that person maintains some sort of supervision and control either because he has an interest in them or derives a benefit from their use."
The dog show drew some spectators to the Fair and this resulted in the price of admission being paid by these spectators, but the dog show was not staged by the Fair with the purpose of making money in mind. It is clear from the testimony in the record that the main purpose of the dog show was to serve the civic function of giving 4-H students who were dog enthusiasts the opportunity to display their dogs, win ribbons, and be recognized for their work.
In summary, we do not find the Fair to have been negligent or at fault for the consequences which arose here, and under the holding of Holland v. Buckley we find the defendant, Mrs. Elizabeth Smith, responsible for the injuries to Sean Adkins. Under the terms of the homeowners insurance policy issued to Mrs. Smith by Cumis Insurance Society, Inc., that insurer is liable to the limits of its liability coverage.
*332 We now come to the question of quantum. As a result of the dog bite, Sean Adkins sustained various permanent injuries to his face and teeth. The total medical expenses incurred to the time of trial were $528.49. Immediately after the accident Sean was seen by his regular pediatrician who referred him to Dr. Richard Hughes, a plastic surgeon, who saw Sean on the day of the accident in the hospital emergency room. Dr. Hughes testified that Sean had sustained four separate lacerations. His examination revealed an irregular two inch laceration lateral to the left eye. Outside of that laceration was another irregular two and one-half inch laceration. There was a one inch laceration of the upper eye lid and a T-shaped one and one-half inch laceration of the lower eye lid. Dr. Hughes cleaned and sutured the wounds in the emergency room and thereafter saw Sean nine times, the last visit being in May of 1973. Dr. Hughes stated that at that time he felt that there had been good healing considering the severity of the lacerations. The doctor stated that there was residual scarring which was visible. He stated that the scarring could be improved somewhat by surgical revision which would require two days of hospitalization at a total cost of approximately $1,000.00. He testified that even after the surgery Sean would have permanent scarring. He estimated that Sean had reached approximately 98% of the improvement that could be expected without surgery.
Sean Adkins was also seen by Dr. E. L. Rabel, a dentist on four occasions in connection with the damage sustained to his teeth as a result of the incident. Dr. Rabel testified that when he first examined Sean on November 17, 1972 his examination revealed a missing deciduous center incisor which was a primary tooth. He replaced the missing tooth with a space maintainer to keep the other teeth from drifting toward the space. Dr. Rabel testified that since the primary tooth is very close to the permanent tooth bud, he could foresee several possible problems as a result of the trauma. Dr. Rabel testified that the permanent tooth could have been injured and therefore would erupt in the wrong position, the surface of the permanent tooth could be scarred, and there could be certain problems with delayed eruption of the permanent tooth. Dr. Rabel stated that it would be impossible to tell what permanent tooth damage had been sustained by Sean until he was approximately six or seven years old. He testified that he did believe that it was very probable that the permanent tooth would be delayed in erupting, which would necessitate the use of braces by Sean at a cost of approximately $150.00 to $200.00.
Plaintiff and defendants have cited to this court a number of cases dealing with dog bites and scars from other sources, none of which are really similar to the case before us. Be that as it may, each case must stand on its own merits, and past cases serve only as a guide in awarding damages. We note that Sean Adkins apparently has no serious emotional problems as a result of the scars left by the dog bite. His mother testified that he was normal except for the scars and tooth loss, and that the family still had a dog of their own in their home.
Therefore, judgment is rendered herein in favor of petitioner, Thomas R. Adkins, individually and against the defendants, Mrs. Elizabeth Smith and Cumis Insurance Society, Inc., in solido, for past and future medical bills in the full sum of $1,750.00 and judgment is also rendered herein in favor of Thomas R. Adkins, for the use and benefit of his minor son, Sean Adkins, and against the defendants, Mrs. Elizabeth Smith and Cumis Insurance Society, Inc., in solido, for disfigurement and pain and suffering in the total sum of $5,000.00, these two defendants being bound in solido to pay legal interest on each of the foregoing sums from date of judicial demand until paid and all court costs including the costs of this appeal. All other demands are dismissed with prejudice.
Reversed and rendered.