420 So.2d 1178 (1982)
Mitchell S. DUFRENE
v.
Melvin FOURNIER, et als.
No. 5-157.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1982.
Rehearing Denied November 17, 1982.
*1179 Leon C. Vial, III, Hahnville, for plaintiff-appellant.
J. Michael Johnson, McGlinchey, Stafford, Mintz & Hoffman, New Orleans, for defendants-appellees.
Before CHEHARDY, BOWES and GRISBAUM, JJ.
BOWES, Judge.
Plaintiff appeals from the trial court judgment which dismissed his suit for damages sustained in an incident in which plaintiff was injured by a bull belonging to the insured of one defendant and being loaded into a trailer by two other defendants, statutory employees of the owner.
The basis of finding liability in this case is LSA C.C. Art. 2316:
"Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."
Additionally, strict liability is imposed by LSA C.C. Art. 2321, which states in pertinent part:
"The owner of an animal is answerable for the damage he has caused."
In discussing the preceding article, the Supreme Court stated:
"... the correct interpretation of Civil Code Article 2321 is as follows: When a domesticated animal harms another, the master of the animal is presumed to be at fault. The fault so provided is in the nature of strict liability (not absolute liability, as in the case of wild animals) as an exception to or in addition to any ground of recovery on the basis of negligence, Article 2316. The owner may exculpate himself from such presumed fault only by showing that the harm was caused by the fault of the victim, by the fault of a third person for whom he is not responsible, or by a fortuitous event." Holland v. Buckley, 305 So.2d 113 (La. 1974)
In the instant case, plaintiff was injured when struck a blow by a bull owned by the insured of one of the defendants. The bull had strayed onto plaintiff's land, where it was detained in a pen by the plaintiff for a few days until the owner, Otto Candies, Jr., could be determined and notified of the bull's whereabouts. Upon being notified, Candies informed plaintiff-appellant that he would send someone to retrieve the bull. Approximately two days later, Candies dispatched defendants, Melvin Fournier and Royce Dempster, to pick up the animal. Melvin Fournier testified both on direct (transcript pgs. 121, 122 & 123) and on cross-examination (pgs. 123 & 124) that he warned petitioner several times not to go into the pen or to attempt to help load the bull. Royce Dempster likewise testified (transcript pgs. 127 & 128) that he warned plaintiff to stay out of the pen containing the bull.
There is conflicting testimony as to whether plaintiff, Mitchell S. Dufrene, actually entered and walked around in the pen with the bull or just climbed to the top of the fence and straddled the top rail with his right leg inside the pen. It is immaterial which testimony is correct; the fact remains that Dufrene moved from a location outside the pen, a position of complete safety, to the location he occupied when struck by the bull, and that his decision to move was entirely free and voluntary and against the advice of both Dempster and Fournier.
*1180 Petitioner's own testimony establishes that he knew and understood that entering the pen with the bull created a risk of injury,
Direct Examination of plaintiff, Mitchell S. Dufrene, by his attorney, Leon C. Vial:
"Q. Had you been in that pen with that bull at any time before this date?
A. Oh, no. No. I never went in there.
Q. Why not?
A. Because.
Q. Because why?
A. He was a strange bull. That's why."
Cross-examination of Plaintiff, Mitchell S. Dufrene, by defense attorney, J. Michael Johnson:
"A. Well, I tell you, I was there when they come got him because I was afraid of that bull. We wasn't feeding.
Q. You were afraid of that bull?
A. Wasn't feeding.
Q. Were you afraid of him?
A. Because that's what got that bull mad because he was hungry.
Q. Well, first answer my question, Mr. Dufrene. Were you afraid of that bull?
A. Well, I'm afraid of any bull.
Q. Because sometimes bulls will run into you or strike you, is that right?
A. Yeah.
Q. And you understand that about bulls?
A. Well, I don't know. That bull was looking mean, that bull.
Q. Before the accident?
A. Yeah.
Q. You've worked with bulls...
A. That's why I never did go in the pen to feed him.
Q. You've worked with bulls all your life, haven't you, Mr. Dufrene?
A. Well, a pretty good while.
Q. Do you know if you don't feed a bull it will make him more agitated perhaps?
A. Oh, yeah.
Q. And you knew this bull hadn't eaten for five days when this accident happened?
A. He never ate and no drink.
Q. Will that make a bull more agitated?
A. Oh, yeah.
Q. So you knew this ...
A. Any cattle.
Q. So you knew this at the time of the accident, you knew that this bull had not eaten or drank for a period of at least five or six days and that he would be more agitated than normal; isn't that right?
A. Could be. Yeah.
Appellant had for six days, up until the time of the accident, avoided any contact with the bull for fear that he could be injured. Our brothers of the Fourth Circuit concluded:
"For a plaintiff to assume a risk, he or she must have knowledge of and voluntarily encounter the risk which causes the injury. Knowledge is the key point and must be proved by a preponderance of the evidence."
Fincher v. Surrette, 365 So.2d 860 (La.App. 4th Cir.1978), rehearing denied, 1979.
It is clear from the evidence that assumption of the risk is applicable here since appellant left a position of safety and voluntarily placed himself in a location which he himself considered dangerous.
For these reasons, the judgment of the trial court is affirmed.
AFFIRMED.