322 So.2d 284 (1975)
Leaster P. DOTSON, tutrix of her minor Child, Isaac Kinchen, Jr., Plaintiff-Appellee,
v.
The CONTINENTAL INSURANCE CO., Defendant-Appellant.
No. 10425.
Court of Appeal of Louisiana, First Circuit.
September 2, 1975.
Rehearing Denied November 24, 1975.
Writ Refused January 30, 1976.
John B. Noland (Breazeale, Sachse & Wilson), Baton Rouge, for defendant-appellant.
James R. Coxe, III, Baton Rouge, for plaintiff-appellee.
Before SARTAIN, ELLIS and PICKETT, JJ.
SARTAIN, Judge.
This action was instituted by Mrs. Leaster P. Dotson as the natural tutrix of her minor son, Isaac Kinchen, Jr., who sustained injuries as a result of a dog-bite incident which occurred at the residence of Mr. and Mrs. J. R. Williams, owners of the dog. Judgment was rendered in the trial court in her favor against the Continental Insurance Company (Continental), the public liability insurer of the Williams, in the amount of $750.00 for personal injuries and $23.30 for medical expenses, from which judgment Continental has appealed. We reverse.
The incident itself, the ownership of the dog, and the resulting injuries are not contested.
*285 However, Continental strenuously urges erroneous factual findings and misapplication of law by the trier of fact.
Mr. and Mrs. Williams owned two dogs, one of which had four puppies. The dogs were kept in their back yard. The yard is completely enclosed. There is a cyclone fence on three sides. On the fourth side is the house, an enclosed breezeway and garage. The breezeway is referred to by the witnesses as the "patio". The only access to the rear yard is either through the breezeway or the living quarters. The breezeway has two doors, one leading to the front yard and another opening into the back yard. There is a utility servitude paralleling one side of the fence.
Isaac Kinchen, who was nine years of age at the time of the incident, testified that he accompanied Michael Rutland to the Williams home to obtain a puppy for Rutland. He stated that Kevin Williams, the assured's son, was inside the yard and that he and Rutland were on the servitude outside the fence. When it was apparent to him that Kevin Williams could not get the puppy over the fence, he stated that Kevin Williams told him to come into the yard to get the puppy. Kinchen stated he asked young Rutland to accompany him but the latter refused. He claims that he then went around to the front of the house, through both doors of the breezeway, and entered the back yard. As he approached Kevin Williams one of the older dogs bit him. He denies ever seeing Mrs. Williams that day.
Kevin Williams testified that Isaac Kinchen and Michael Rutland had come to his house to get a puppy for Rutland when Kinchen asked if he could have one also. Kevin Williams then told Kinchen he would have to ask Mrs. Williams. This conversation took place in the front yard of the Williams home. Kevin then went to the back yard and was going to hand Michael Rutland his puppy over the fence. Young Williams specifically denied that he told Isaac Kinchen to come into the dog yard. The first knowledge young Williams had that Isaac Kinchen was, in fact, in the yard was when he heard him scream. He (Williams) immediately turned the corner of the garage to see what had happened.
Mrs. Williams testified that she had observed these young boys in her front yard before the incident had occurred and had called to her son to come into the house to get ready for church. She thought that he had done so. At this point in the sequence of events she stated that Isaac Kinchen asked her if he could have a puppy also. In response to this request she stated: "Now, wait here, let me get Kevin to go with you in the back yard." The conversation between Mrs. Williams and Isaac Kinchen occurred just inside the front door of the breezeway. She then went into the kitchen to get her son and before she could ascertain that he was already outside she "heard the commotion" and "knew then that Kevin had not come in the house" and that Isaac Kinchen had gone into the back yard through the other door.
Michael Rutland was not called to testify by either party.
Continental contends that the trial judge erred in his factual conclusion that Isaac Kinchen was "legally on the premises". Continental further contends that the trial judge erred as a matter of law in applying the rule recently announced in Holland v. Buckley, La., 305 So.2d 113 (1974), to find liability under the circumstances of this case. The thrust of this latter argument is to the effect that young Isaac Kinchen created the risk of being bitten when he disobeyed Mrs. Williams and went into the back yard unattended by Kevin Williams.
Plaintiff argues that the trial judge resolved the question of Isaac Kinchen's invitation to go into the back yard in favor of plaintiff and that this determination of fact is not manifestly erroneous. Plaintiff argues that inasmuch as Isaac Kinchen was only several feet away from Kevin Williams it supports the conclusion that *286 Kinchen observed Williams in the yard and saw no reason for him (Kinchen) to wait for Williams to accompany him to the back yard.[1] He concludes by arguing that the incident would have occurred nonetheless and states:
"This case is simply an example of an unexpected unprovoked attack by animals whose actions are simply unpredicted and at whom the strict liability of Holland v. Buckley was directed."
The trial judge in his oral reasons for judgment, rendered at the conclusion of the trial, stated:
"Well, it's unfortunate that this incident had to occur, however, it has to be noted and I think . . . Isaac wasn't teasing the dog that day, the day it bit him, the day the dogs bit him he wasn't teasing them, so, you have got a situation where this boy was invited on the premises; he's not a stranger; he's played with the kid (Williams) before. So you have a boy that's legally on the premises and then the dog bites him and, I think under the Holland case, I think the Defendant is liable for the damages done to Isaac.
"Now, the doors were not locked, the patio doors were not locked, neither was the outside fence door locked. That testimony was elicited by, I think, Kevin himself when he testified to that. The doors were not locked, which meant that Isaac could go into where the dogs were and it was possible for him to be there."
In Holland v. Buckley, supra, the Supreme Court of this state, overruling a long line of previous cases, held that C.C. Art. 2321 imposed strict liability upon the owner or keeper of animals that do harm to others.
Justice Tate, speaking for the majority, stated: (305 So.2d 113, 114)
"The issue before us is: When an innocent bystander is bitten by a dog, who shall bear the damages so caused? The bystander passing on the street, who did not provoke the attack? Or the owner of the dog, who created the risk by letting the dog go loose?"
The court therein concluded: (305 So.2d 113, 119)
"We hold, therefore, that the correct interpretation of Civil Code Article 2321 is as follows: When a domesticated animal harms another, the master of the animal is presumed to be at fault. The fault so provided is in the nature of strict liability, as an exception to or in addition to any ground of recovery on the basis of negligence, Article 2316. The owner may exculpate himself from such presumed fault only by showing that the harm was caused by the fault of the victim, by the fault of a third person for whom he is not responsible, or by a fortuitous event."
* * * * * *
"The underlying reason for the owner's liability is that, as between him who created the risk of harm and the innocent victim thereby injured, the risk-creator should bear the loss. He maintains the animal for his own use or pleasure."
Thus when a plaintiff proves that he has been bitten by a dog of another, the burden shifts to the owner of the animal to exculpate himself by showing (1) that the harm was caused by the fault of the victim; (2) by the fault of a third person for whom the owner is not responsible, or (3) by a fortuitous event.
With respect to the facts of this case we are compelled to reverse the trial judge in his conclusion that young Isaac Kinchen was "legally on the premises". Young Kinchen was "legally" on the patio but he was given specific instructions to wait there until he could be accompanied by the owner's young son. This lad is nine years of age and has reached the age of *287 reason and should have remained on the patio as he was instructed. It can not be held that he had permission to leave or enter the back yard at will because the evidence is clear, even by Kinchen's own admission, that he had not played in that back yard for several years. The last time was at least one year before the Williamses obtained the dogs. This is not a situation where young children in a neighborhood played in one another's back yards at will. Young Kinchen was unknown to Mrs. Williams and there is no evidence in this record that any children were permitted to play in the yard where the dogs were housed. It is for this reason that we can not agree with the statement of the trial judge that young Kinchen "is not a stranger; he's played with the kid before."
The last paragraph of the trial judge's oral reasons for judgment, quoted above, seems to place an unreasonable requirement on the dog owner to keep the doors to his residence locked. We do not believe that Holland v. Buckley, supra, imposes any such requirement to keep all doors locked to prevent the possibility that young Kinchen would proceed into the Williams' back yard contrary to instructions. The one gate to the cyclone fence was locked. The doors of the breezeway were not.
Thus, simply put, the question for resolution here is whether the owner of a dog is liable when that owner keeps his dogs in an enclosed yard where the only access to that yard is through a portion of the premises and where, uninvited, a young nine-year-old boy proceeds to go into the yard without waiting for the owners' son to accompany him as he was directed.
We think this question should be resolved in the negative and that the incident in question was, in fact, caused by the fault of young Kinchen in not following the instructions of Mrs. Williams.
In Holland v. Buckley, supra, the court further stated: (305 So.2d 113, 119)
"Article 2321 places the master of the animal under a legal obligation to keep his animal under such guard that it does no damage to others. A fault in this obligation to control the animal and guard others from harm by it entitles the victim to recover damages thereby sustained."
The facts of this case clearly indicate to us that the Williamses have satisfied this legal obligation imposed upon them by keeping their dogs secured and permitting no one to enter their yard without the presence of their son.
Accordingly, we hold that the defendant's assureds have satisfactorily met the burden of proof and that the incident here was caused by the fault of the victim himself by proceeding into the yard contrary to the owner's instructions.
Therefore, the judgment of the trial court in favor of the plaintiff is reversed and this case is dismissed at plaintiff's costs.
Reversed and rendered.
NOTES
[1] This argument is directly opposed to Isaac Kinchen's testimony that he did not see Mrs. Williams.