510 So.2d 685 (1987)
Jessie HOWARD, et al.
v.
ALLSTATE INSURANCE COMPANY, et al.
No. CA-6752.
Court of Appeal of Louisiana, Fourth Circuit.
May 19, 1987.
Rehearing Denied August 28, 1987.
*686 Glenn E. Diaz, Chalmette, for plaintiffs-appellees.
Christopher E. Lawler, Arthur J. O'Keefe, Metairie, for defendants-appellants.
Before SCHOTT, WARD and WILLIAMS, JJ.
WARD, Judge.
This appeal arises from a suit for damages which resulted from a dog bite. The victim, eleven year old Tina Holloway, was attacked and bitten by a dog belonging to Chris and Peggy Barcelona while she was playing with the Barcelonas' daughter, Christie, in their yard. The jury found in favor of the plaintiffs, assessing total damages of $28,000.00 but finding Tina Holloway fifty percent at fault, thus reducing her award to $14,000.00. On the plaintiffs' motion for judgment notwithstanding the verdict and for a new trial, the Trial Judge increased the damages to $32,000 and eliminated the jury's finding that Tina was at fault and the proportionate reduction of her recovery. The Barcelonas and their insurer, Allstate Insurance Company, appeal. They contend that the Trial Judge erred in granting the judgment notwithstanding the jury verdict, both on the questions of liability and damages, and that the jury awarded excessive medical expenses. Alternatively, the defendants argue that they were completely free from fault and hence the plaintiffs should recover nothing.
We reverse the judgment notwithstanding the verdict and reinstate the jury's finding that the parties were equally at faultTina Holloway was negligent and the Barcelonas were strictly liable pursuant to Civil Code Article 2321. We believe that it is appropriate in this case to take Tina's negligence into consideration and to reduce the amount of damages in proportion to the extent to which her conduct caused her injuries. We also reinstate the jury's findings of damages except for the item of medical expenses which we reduce.

FACTS
The facts surrounding this unfortunate accident are for the most part undisputed. The defendants, Chris and Peggy Barcelona, and their daughter Christie lived in a mobile home in rural St. Bernard Parish. They kept a German Shepherd dog, Nick, in their yard as a watch dog. The Barcelonas' yard was completely surrounded by a wooden fence. The enclosed yard consisted of two areas: a very small front yard adjoining the front porch of the home and a larger back yard were Nick stayed during the day. The two areas were separated by a latched gate. Thus Nick was kept in an area which is beyond two gates: the first allowing entry to the front yard from the parking area and the second allowing entry from the front yard to the back yard. A "Beware of Dog" sign was posted on the fence beside the gate which opened into the front yard. The back yard contained a pen into which Mr. or Mrs. Barcelona customarily placed Nick when they had company.
On May 19, 1983, Tina Holloway, Christie Barcelona, and Tina's younger sister and *687 brother were playing in a vacant lot adjacent to the Barcelonas' yard. Tina, eleven years old at the time, was the oldest child in the group. Her family had moved into a house across the road from the Barcelona residence approximately a month before, but May 19th was the first day that Christie and Tina had played together. After a time the children tired of playing in the lot, and Christie Barcelona, who was then seven years old, invited the other children to play on her swing set which was in the back yard where Nick was kept. At this point there is contradiction among the three children who testified. Christie said she told the other children to wait while she went inside the house to get her mother to put Nick in his pen. Tina and her sister Sherrie deny being told to wait. They testified that Christie told them that it was all right to go into the yard because Nick wouldn't bite. Whatever the instruction given Tina, she preceded the younger children into the yard where she was immediately attacked by Nick, whom she had not seen before he attacked her. There was some conflict in the evidence as to whether Tina was in the front yard when she was attacked and the dog jumped the fence or whether she had opened the second gate and gone into the back yard. Most of the witnesses, however, placed her well inside the back yard.
Tina sustained several lacerations, the most serious on the side of her face. As is typical of bite wounds, the healing process was slow and painful, and disfiguring scars developed. Dr. Onyx P. Garner, Jr., the plastic surgeon who treated Tina, testified that he recommends surgery and other procedures which will partially remove the scars. He testified, however, that Tina is psychologically unable to cooperate with further medical treatment due to fear and withdrawal. Apparently the dog bite incident exacerbated Tina's preexisting anxiety and shyness. Dr. Garner supported his evaluation of Tina's psychological condition with the report of a consulting psychiatrist whom he had asked to examine Tina. The report stated that Tina appeared two to three years younger than her age and had a "depressed and anxious affect."

JURY VERDICT
On the basis of this evidence, the Trial Judge charged the jury on both negligence and strict liability under La.C.C. art. 2321 and Holland v. Buckley, 305 So.2d 113 (La.1974). A special verdict form was used which required the jury to determine the fault of both the Barcelonas and Tina. The interrogatories asked whether the Barcelonas were "guilty of substandard conduct or fault which proximately caused" Tina's injury and damage and whether Tina was "guilty of substandard conduct or negligence which contributed to her own injury or damage." The jury answered both questions in the affirmative and apportioned the fault equally between the parties. The Trial Judge reduced the damages award by fifty per cent based upon this apportionment of fault.

JUDGMENT NOTWITHSTANDING THE VERDICT
In the motion for the judgment notwithstanding the verdict the plaintiffs contended that their suit was a strict liability action under C.C. art. 2321, and hence, as a matter of law, even if Tina was negligent, her negligence should not reduce her recovery. The plaintiffs also raised this contention during closing arguments and in objections to the jury charges. It was opposed by defense counsel who insisted that the action was not one in strict liability, but rather was based was upon the defendants' negligence. Believing that the theory of the case will determine the effect of Tina Holloway's conduct upon her recovery, the parties again raise the issue on appeal.
We need not reach the question of the effect of Tina's conduct upon her recovery unless we find that the Trial Judge was manifestly erroneous in concluding that Tina did not contribute to her own injury. Because the finding was the basis of a judgment notwithstanding the verdict, we apply the standard recently stated in Boisdore v. Bridgeman, 502 So.2d 1149 at 1156 (La.App. 4th Cir.1987). A motion for a judgment notwithstanding the verdict of the jury should be granted only in cases *688 where, after considering all of the evidence presented at trial in the light most favorable to the non-moving party, the Trial Judge finds that the facts and all reasonable inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a verdict in favor of the other party. In applying this standard the court cannot weigh the evidence, pass on the credibility of the witnesses, or substitute its judgment of the facts for that of the jury. Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir. 1979).
In their appeal of the judgment not withstanding the verdict, in which they urge that we reinstate the jury's finding that Tina's conduct did in fact contribute to her own injury, the Barcelonas contend that the Judge impermissibly substituted his judgment of the facts for that of the jury. We disagree with this characterization of the Trial Judge's action, but nonetheless find that he erred. In his reasons for granting the judgment notwithstanding the verdict the Trial Judge stated that he was "unable to understand how twelve reasonable persons could conclude that the 11 year old plaintiff, with a report of mental ability of lesser years ... in any way contributed to her own injury." The Trial Judge's reasons indicate that, even accepting the facts as apparently found by the jury in the light most favorable to the defendants, he concluded that a reasonable jury could not have found that Tina Holloway contributed to her own injuries. We disagree with this conclusion. Children of Tina's age are capable of legal negligence, Wilkinson v. Hartford Accident and Indemnity Co., 411 So.2d 22 (La.1982), and Tina's trial testimony shows that she possessed sufficient experience, intelligence, and judgment to exercise care for her own safety. The facts and inferences viewed in the light most favorable to the defendants' positionthat Tina was negligentshow that she paid no heed to the warning sign on the first gate, she disobeyed Christie's instructions to wait while Mrs. Barcelona put Nick in his pen, and that she unlatched and opened the second gate and walked several feet into the second yard without even looking for the dog. Considered in this manner, this evidence amply supports the jury's finding that Tina was guilty of substandard conduct or negligence which contributed to her own injury. Hence, the Trial Judge erred in entering judgment not withstanding the verdict and we reinstate the jury's verdict finding Tina 50% at fault.
We reject the defendants' alternative argument that Tina was 100 per cent at fault in causing her injuries. In support of that argument the Barcelonas' counsel relies entirely upon Dotson v. Continental Insurance Co., 322 So.2d 284 (1st Cir. 1975), cert. denied 325 So.2d 606 (La.1976), a case remarkably similar on its facts to the one before us. In Dotson, the Court of Appeal reversed the Trial Court judgment in favor of the plaintiff, finding that the nine year old victim had caused his own injuries by entering the defendants' backyard in disobedience of their specific instructions. Although Dotson is persuasive, we are not obliged to follow it. We need not find manifest error in the case before us simply because a contrary holding emerged from a factually similar case in a different circuit more than a decade ago. Moreover, when Dotson was decided, a plaintiff's contributory negligence, whether amounting to "victim fault" or not, was a total bar to the recovery of damages. The law is different today. Finally, the persuasive authority of Dotson was considerably weakened by a footnote to the Supreme Court decision in Rozell v. Louisiana Animal Breeders Cooperative, Inc., 496 So. 275 (La.1986), which stated, "several early dog bite cases decided soon after Holland v. Buckley, supra, would arguably be decided differently if victim fault had been interpreted as the court does today: action that rises to the level of a substantial cause of the accident." 496 So.2d at 280 n. 3. Dotson is cited immediately following this statement. For these reasons, we will not follow Dotson.
Having found Tina Holloway and the Barcelonas equally at fault in causing Tina's injuries, we now consider the effect of that apportionment of fault, and conclude that Civil Code Article 2323 should be *689 applied to reduce the damages Tina can recover in proportion to her negligence.

SOURCE OF DEFENDANTS' LIABILITY
The defendants' liability in this case arises primarily from Article 2321 of the Civil Code. The correct interpretation of this article is that when a domesticated animal causes harm, the owner of the animal is presumed to be at fault. This fault is in the nature of strict liability. Holland v. Buckley, 305 So.2d at 119. The injured person need not prove the negligence of the owner. Liability arises solely from the legal relationship between the owner and the animal. Rozell v. Louisiana Animal Breeders Cooperative, Inc., 434 So.2d 404 (La.1983). Hence, the Barcelonas' arguments that they exercised reasonable care in protecting Tina from their dog Nick are to no avail. The plaintiffs' showing that Tina was injured by the Barcelonas' animal satisfied the elements of Article 2321, and a presumption of the Barcelonas' fault was established.
This liability of animal owners under Articles 2321 is an expression of this state's policy for imposing a form of "strict" liability based solely upon specified legal relationships rather than upon conduct per se. It is a form of strict liability virtually unknown to the common law. Although this relational responsibility type of strict liability is not based upon negligence, it is premised upon the broad concept of legal fault as contemplated by Article 2315 and amplified by Civil Code Articles 2317 through 2322. Loescher v. Parr, 324 So.2d 441, 445 (La.1975). See also, Langlois v. Allied Chemical Comp., 258 La. 1067, 249 So.2d 133 (1971); Stone, Tort Doctrine in Louisiana: The Concept of Fault, 27 Tul.L.Rev. 1 (1952).
This liability is strict only in the sense that it does not depend on proof of negligence. Kent v. Gulf States Utilities Co., 418 So.2d 493, 496 (La.1982). The major difference between an action under the relational responsibility articles and an action in negligence is evidentiary. In many cases, the policy reasons for imposing relational responsibility strict liability are the same as those supporting liability under negligence. See, Entrevia v. Hood, 427 So.2d 1146 (La.1983).
The case law has consistently allowed only three defenses to a claim based upon the relational responsibility articles: (1) an irresistible force; (2) the fault of a third person; and (3) the fault of the victim. Loescher, 324 So.2d at 447. These defenses were established at a time when a plaintiff's recovery of damages in a negligence action was completely barred if his conduct contributed to his own injury. Given this effect of the plaintiff's contributory negligence in a negligence action, it was logically consistent for the fault of the victim in an Article 2321 strict liability action to also totally bar his recovery. See, for example, Dotson v. Continental Insurance Co., discussed above. By formulating the rule that victim fault, like contributory negligence, was a total bar to recovery, courts reached consistent results in all cases involving substandard conduct by the victim, regardless of which theory of the defendant's liability was used.

COMPARATIVE FAULT
Contributory negligence as a complete bar to recovery was not grounded in our civil law tradition, but was a common law concept engrafted onto our civilian tort doctrine, often producing anomolous or strained results as the courts attempted to avoid its all-or-nothing effect. The legislature re-established the concept of comparative fault in our law by rewriting Civil Code Article 2323, effective August 1, 1980, to provide:
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
*690 The comparative negligence statute does not apply to the determination of liability; it applies only to the computation of damages. The courts are free to continue to develop theories of tort liability, including defenses to that liability. The statute is to be utilized only in cases in which "contributory negligence is applicable to a claim for damages," but the article does not designate the cases in which courts can or cannot allow a defense of contributory negligence. Neither does the article define the "fault of another person," nor limit the concept to negligence actions. Hence, courts have discretion in determining when damages are to be apportioned under the statute. That discretion may go so far as to allow the application of comparative negligence to a claim previously insusceptible to the defense of contributory negligence, such as strict products liability. Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985).
The legislative history of the comparative negligence statute supports the conclusion that it may apply in strict liability cases although the complete defense of contributory negligence would not have been permitted under prior law. The statute as passed in 1979 was essentially the same version proposed by the State Law Institute in 1970, before the development of most of the strict liability theories which exist in our law today. In 1970, the great majority of tort actions were brought under negligence theories, and contributory negligence was the primary defense. At the time Article 2323 was originally drafted, we had not yet recognized strict products liability, which was established in Weber v. Fidelity & Casualty Insurance Co., 259 La. 599, 250 So.2d 754 (1971), and we had yet to develop the theories of relational responsibility strict liability. Loescher v. Parr, 324 So.2d 441 (La.1975Article 2317; Turner v. Bucher, 308 So.2d 270 (La.1975)Article 2318; and Holland v. Buckley, 305 So.2d 113 (La.1974)  Article 2321. Thus, these species of legal fault, which today are the basis of a substantial portion of all tort claims, were recognized and developed by the courts during the time that the comparative negligence statute was under consideration before committees of the State Law Institute and legislature. Thus, it stands to reason that by enacting Article 2323 substantially as it was proposed in 1970, the legislature intended for the courts to take into consideration the intervening jurisprudential developments when applying the statute. We believe, therefore that when Article 2323 refers to the "fault" of a person other than the plaintiff, that fault may encompass both negligence and legal fault under strict liability.

THE JURISPRUDENCE
As long as an injured plaintiff's contributory negligence remained a total bar to recovery of damages, that defense was generally unavailable when the defendant's fault arose under strict liability. See, e.g., Langlois, supra. Courts held that in order to constitute a valid defense to strict liability a plaintiff's conduct had to rise to the level of victim fault. Although the doctrine of contributory negligence is no longer the law, the meaning of victim fault has yet to be laid to rest by the courts. In Rozell v. Louisiana Animal Breeders Cooperative, 496 So.2d 275 (La.1986), a recent case arising under Article 2321 prior to the enactment of the comparative fault statute, the Court held that the defense of victim fault was not available because the victim of a charging bull had not assumed the risk of his injuries. The Court said that for victim fault to be a legal defense it must be "at least a substantial cause." Thus, in cases like Rozell, arising before the institution of comparative fault, courts will have to consider whether the plaintiff's conduct amounted to a substantial cause, and we suspect, as under the old doctrine of contributory negligence, courts will often strain to find no victim fault. See, e.g., Duvalle v. Lake Kenilworth, Inc., 503 So.2d 49 (La.App. 4th Cir.) cert. denied, 503 So.2d 49 (La.1987).
The unavailability of the defense of contributory negligence in strict liability actions was substantially undercut by the plurality opinion in Dorry v. Lafleur, 399 So.2d 559 (La.1981), a case decided after the effective date of the comparative negligence *691 statute but arising from an accident which occurred before that datehence based upon the premise that contributory negligence was a total bar to the plaintiff's recovery. Dorry involved a claim under Article 2322 which provides that an owner is strictly liable for the ruin of his building. The Court stated that "[w]hen a plaintiff's negligence contributes to his own damage, there is no reason to ignore his fault in every case simply because the defendant's liability is based on some legal fault other than negligence." The Court went on to note that there was no policy reason to deny the defense of contributory negligence to defendants who are strictly liable under the relational responsibility articles of the Code and that the availability of the defense should be developed on a case by case basis.
Although, in Dorry, the Court ultimately found the defense unavailable, Dorry invited the application of contributory negligence in relational responsibility strict liability cases. In Carpenter v. State Farm Fire and Casualty Co., 411 So.2d 1206 (La.App. 4th Cir.1982), another pre-comparative negligence case, this Court held that the liability of the City of New Orleans for injuries caused by defects in its sidewalks required consideration of the plaintiff pedestrian's contributory negligence. The primary rationale of this holding was that the common law was the source of the rule that contributory negligence was not a defense in strict liability actions and the common law does not impose strict liability for relational responsibility. Traditional common law strict liability, imposed only for defective products and ultrahazardous operations, furthers social policies which are not present in our relational responsibility strict liability. Hence, there is no basis for applying the common law rule prohibiting the defense of contributory negligence to this peculiar Louisiana species of strict liability. Carpenter has been followed many times by this Court and the other courts of appeal. See, for example, Nothern v. Department of Streets, 455 So.2d 1288 (La.App. 4th Cir.1984); Pope v. City of Baton Rouge, 449 So.2d 1070 (La.App. 1st Cir.1984); Hayes v. State, through Department of Transportation, 467 So.2d 604 (La.App. 3rd Cir.1985).
The foundation for applying contributory negligence in strict liability cases was further strengthened by Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982), which involved Article 2317 strict liability of a utility company as owner of allegedly defective high voltage electric lines. The Kent opinion emphasized the conceptual similarities between negligence and strict liability. The Court ultimately held in favor of the utility company without reaching the question of the victim's negligence. Nonetheless, Justice Lemmon, author of the opinion, noted that "[s]ubstantial justice can only be accomplished by quantifying the fault of each party and assigning proportional responsibility for the occurence." Such a result was impossible in Kent, however, because the accident occurred before the adoption of the comparative fault system. In a concurring opinion, Justice Dennis elaborated upon the relationship between negligence and strict liability under Articles 2317, 2318, 2320, 2321 and 2322. He noted that these articles impose liability upon a defendant who had neither actual nor constructive knowledge of the defective thing in his custody, but that the harshness of this liability without negligence "may be ameliorated, to a large degree, if the doctrine of comparative negligence is found to apply in 2317 actions."
The question of the applicability of contributory negligence in a strict liability action was squarely presented to the Supreme Court on certification from the U.S. Fifth Circuit Court of Appeals in Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985). In that products liability case, which arose before enactment of the comparative negligence statute, the Supreme Court held that contributory negligence as a complete bar to recovery does not apply in strict products liability actions. Nonetheless, the court held that pure comparative fault principles were applicable in some cases, and in those cases, the injured plaintiff's recovery of damages should be reduced in proportion to the percentage of negligence attributable *692 to him. Again, as in Dorry, the courts were left with a rule to be applied, or not, on a case by case basis: the plaintiff's recovery is to be reduced in proportion to his own negligence only in cases in which "pure comparative fault principles would seem to coincide with and further the goals of products liability doctrine...." In a separate opinion dissenting from the majority's application of comparative negligence before enactment of the statute, Justice Blanche stated that "the bench and bar would be better served if the doctrine of comparative negligence would be applied uniformly...." that is, "in all cases where the fault of both parties contributes [to] the injury, whether under Civil Code Article 2315 or Article 2317 or any other conceivable theory of liability." Similarly, Justice Marcus, dissenting for the same reason, stated, "if this accident had occurred after comparative negligence came into effect, plaintiff's recovery would be reduced to the extent of his fault, since the proportionate fault of both plaintiff and defendant is to be assessed in all tort cases arising under comparative negligence."
Recent jurisprudence reflects that, in appropriate circumstances, the courts are applying comparative fault principles in strict liability cases. Several of these cases arising under Article 2317 were cited with approval by the Supreme Court in Landry v. State, 495 So.2d 1284 (La.1986), a case in which the Court compared the fault of the strictly liable Orleans Levee Board with that of the plaintiff who fell and was injured because he failed to see a hole next to the Lake Pontchartrain seawall.

APPLICATION OF COMPARATIVE FAULT IN THIS CASE
We conclude, in light of the foregoing statutory and case law, that comparative fault applies in cases such as this where a domesticated animal inflicts injuries for which its owner is held liable under Article 2321. This conclusion is not only supported by the Civil Code, doctrine and jurisprudence, but we believe the application of comparative fault principles in relational responsibility cases will foster further development of our law of negligence and strict liability as a logical and cohesive system. Finally, and perhaps most importantly, we believe that a fair and just allocation of the loss must include a consideration and comparison of the extent to which the respective faults of both parties caused the injury.
Our inquiry into the applicability of comparative fault in this case was initially prompted by the parties' persistent argument that the effect of Tina Holloway's negligence, and hence her recovery of damages, would differ depending upon the theory of the defendants' liabilitynegligence or strict liability. Troubled by these arguments in the face of our procedural code's abolition of the theory of the case doctrine, we found others equally troubled by the inequities of comparing fault in negligence cases but not in those based upon strict liability.
If comparative principles are not allowed to function there will be the paradoxical situation in strict liability areas in which a defendant who admits or is proved to be negligent will be liable for only part of the damages caused to a contributorily negligent plaintiff, whereas a defendant who is entirely innocent and has done his best, albeit unsuccessfully, to avoid causing injury will be liable for all damages including the portion caused by the negligent plaintiff. This and similar possibilities, as recognized by some courts, will promote adroit gamesmanship in pleading and practice that decades of reform effort have sought to eliminate from our system of justice.
Plant, Comparative Negligence and Strict Tort Liability, 40 La.L.Rev. 403, 418 (1980).
We believe application of the principles of comparative fault in strict liability as well as in negligence actions will result in consistency and symmetry in results, allowing courts to render judgments granting relief to which the parties are entitled, based upon the evidence they present rather than upon the theories they plead. La.C.C.P. arts. 862 and 2164.
*693 Further consideration of the problem revealed that an all-or-nothing result in relational responsibility strict liability cases would impede the jurisprudential evolution of this area of law.
In addition, application of the comparative negligence statute should not be limited by restricting its operation to those situations in which contributory negligence would have been a defense under the case law at the time of the enactment. Such an interpretation would prevent the expansion of comparative principles as a complement to new emphases in tort law. For example, the shift from negligence to strict liability theories by the Louisiana Supreme Court might be retarded if the comparative negligence statute cannot be invoked by a holding that contributing [not contributory] negligence is an applicable defense.
Note, Contributing NegligenceWhen Should it be a Defense in a Strict Liability Action? 43 La.L.Rev. 801, 809 (1983) [Emphasis added to highlight the author's use of "contributing" rather than "contributory" negligence to describe a plaintiff's substandard conduct after enactment of the comparative negligence statutea semantic device also utilized by other commentators to avoid connotations of an absolute bar to recovery].
Finally, we believe that the fairest result in this case is an allocation of the loss between the parties. It would not be just for negligent plaintiffs to recover only reduced damages under a negligence theory but to recover full damages under a strict liability theory. As the First Circuit explained in Sullivan v. Gulf States Utilities Co., 382 So.2d 184, 189-90 (La.App. 1st Cir.), writ denied, 384 So.d 447 (La.1980):
We think the policy reasons underlying Loescher v. Parr point away from such an ironic result. Loescher was based on a proposition that, out of two innocent parties, the owner or guardian of a thing should pay for any damage caused by that thing. We do not have two innocent parties in this case, as the word innocent is understood in strict liability law.
A large measure of the resistence to comparing the negligent conduct of a plaintiff with the fault of a strictly liable defendant is the conceptual difficulty of comparing two distinct types of legal fault. The most satisfactory result seems to be the principle of comparative causation. Under this principle, the fact finder compares the causal effect of the plaintiff's conduct with that of the defendant's non-negligent fault. This methodology is supported by the Supreme Court's citation in Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985), to the Uniform Comparative Fault Act, Section 2(b) which provides:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. [Emphasis added.]
Hence, the extent to which each party contributed to the damages should be the measure by which the loss is apportioned.
Accordingly, we hold that the plaintiff's recovery of damages, as amended by this Court on appeal, are to be reduced by fifty percent based upon the jury's attributing fifty percent of the fault in causing Tina Holloway's injuries to her own negligence.

DAMAGES
The Barcelonas have also appealed the quantum of damages, which was also the subject of the judgment notwithstanding the verdict. The jury found damages as follows:

 PHYSICAL INJURY SUFFERED $1,000.00
 PAIN & SUFFERING, BOTH PHYSICAL
 AND MENTAL $7,000.00
 PERMANENT OR PARTIAL DISABILITY
 IF ANY, INCLUDING
 SCAR AND DISFIGUREMENT $12,500.00
 MEDICAL EXPENSES, PAST AND
 FUTURE $7,500.00

In the motion for judgment notwithstanding the verdict and a new trial, plaintiffs requested increases in the first two items of damages. The Trial Judge increased only the award for physical injury *694 to $5,000.00. The defendants appeal this increase.
The jury verdict shows that the physical injury item was intended to compensate only for the actual attack by the dog. The physical and mental pain and the disfigurement resulting from the injury are compensated separately. Even though it is difficult to separate the physical injury, that is, the trauma of being bitten by a dog, from the concepts of physical and mental pain, we believe that, viewing the evidence in the light most favorable to the defendants, reasonable and fair-minded jurors could conclude that while the pain and suffering damages were $7,000.00, the physical injury alone was worth $1,000.00. We therefore, reinstate the jury's assessment of $1,000.00 in damages for physical injury.
Finally, the defendants contend that the amount awarded by the jury for medical expenses is excessive. The record shows that the jury was in error when it awarded $7,500.00. The testimony of Dr. Garner shows that the largest amount within the jury's discretion was $4,800.00. The figure is comprised of $700.00 in past medical expenses and $4,100.00, Dr. Garner's highest estimate of the cost of two future surgical procedures and overnight hospitalization for each. Accordingly, we reduce the award for medical expenses to $4,800.00.
For the foregoing reasons, the judgment notwithstanding the verdict of the jury is vacated insofar as it found Tina Holloway free from fault and increased the damages for physical injury. We reinstate the jury verdict finding Tina Holloway's negligence contributed to her injuries and apportioning responsibility for the damages equally between the parties. Article 2323 is utilized to reduce the damages recovered by fifty percent. The jury verdict is reinstated to award $1,000.00 for physical injury. Medical expenses are amended to award $4,800.00. In sum, the judgment for damages as amended, should read:

 PHYSICAL INJURY $1,000.00
 PAIN & SUFFERING, PHYSICAL
 AND MENTAL $7,000.00
 PERMANENT OR PARTIAL DISABILITY,
 INCLUDING SCAR AND
 DISFIGUREMENT $12,500.00
 MEDICAL EXPENSES, PAST AND
 FUTURE $4,800.00

As amended, judgment is rendered in favor of Constance Mae Howard as tutrix for the use and benefit of Tina Louise Holloway and against Chris Barcelona, Peggy Barcelona, and Allstate Insurance Company, jointly and in solido, in the true and full sum of TWELVE THOUSAND SIX HUNDRED FIFTY and NO/100 ($12,650.00) Dollars, plus legal interest thereon from date of judicial demand until paid and for all costs in the Trial Court and on appeal.
In all other respects, the judgment of the Trial Court is affirmed.
AMENDED AND AFFIRMED.
WILLIAMS, J., dissents.
WILLIAMS, Judge, dissenting with reasons.
I respectfully dissent.
I find no reason at this time to reach the majority's conclusion that comparative fault is applicable in cases such as this.
Tina Holloway's disregard of both oral and written warnings were the substantial cause of the accident. Thus, her actions constituted victim fault, a complete defense to strict liability. See Rozell v. Louisiana Animal Breeders Co-op., 496 So.2d 275, 280 (La.1986).
I find this case to be distinguishable from those referred to by the Louisiana Supreme Court in its footnote to Rozell, supra. Here, the dog was kept confined behind two separate fences, and obviously the jury believed that Tina received more than adequate warnings about the dog. If we were to hold defendants strictly liable, then it would seem that victim fault would be restricted only to acts of provocation, even when a dog owner takes every reasonable precaution.